**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

ABUSSAMAA RASUL RAMZIDDIN,

            Plaintiff,

   v.

                                   Civ. Action No. 07-5303 (KSH)

JERRY SPEZIALE, et al.,

            Defendants.                    **OPINION**

**Katharine S. Hayden, U.S.D.J.**

Pending before this Court is a motion filed by defendants (collectively, "Passaic County Jail" or "PCJ")[1] that seeks summary judgment against the first amended complaint that was filed by plaintiff Abussama Rasul Ramziddin ("Ramziddin"), in which plaintiff alleges that he was assaulted by PCJ officials, and then denied adequate medical care. The movants filed on the same day that the final pretrial order was entered, and they seek a final decision in their favor on the merits. They base their motion on the ground that plaintiff has failed to submit any "independent evidence" sufficient to establish a triable issue of material fact.

---

[1] The first amended complaint names the following defendants: Jerry Speziale, Sheriff of Passaic County Jail; Charles Myers, Warden of Passaic County Jail; William J. Pascrell, III, Council of Passaic County; Passaic County Board of Chosen Freeholder(s); and one to fifty unknown individuals in Passaic County Jail. The Passaic County Board of Chosen Freeholders now are identified on the docket sheet as Elease Evans, Pat Lepore, Tahesha Way, Terry Duffy, James Gallagher, Bruce James, and Sonia Rosado.

## I.  LOCAL CIVIL RULE 56.1

New Jersey Local Civil Rule (L.Civ.R.) 56.1(a), as amended in 2008, requires that on summary judgment motions, both the moving and non-moving parties furnish a statement identifying what each side deems to be the material facts, so that the Court can determine if a genuine dispute exists.  The commentary to the Rule notes that "the requirement of a separate document represents a change from the practice under the former version of the rule," and that "[t]he Rule 56.1 statement is viewed by the Court as a vital procedural step, since it constitutes and is relied upon as a critical admission of the parties."  The commentary specifies the content and format of the statement: e.g., the assertions must be set out in separately numbered paragraphs; each fact must be supported by a citation to an affidavit.

Consequences of a movant's noncompliance with the Rule can be severe—"[a] motion for summary judgment unaccompanied by a statement of material facts not in dispute shall be dismissed."  L.Civ.R. 56.1(a); *see e.g., Kee v. Camden County*, 2007 U.S. Dist. LEXIS 23637, at *14 (D.N.J. 2007) (Simandle, J.); *Langan Eng'g & Envtl. Servs. V. Greenwich Ins. Co.*, 2008 U.S. Dist. LEXIS 99341 (D.N.J. 2008) (Greenaway, J.).  Where an opposition brief is not accompanied by a Rule 56.1 statement, the movant is not automatically entitled to summary judgment.  Instead, the judge "may enter summary judgment in favor of the moving party only if the moving party has established that summary judgment is appropriate."  *Cornelio v. Coupon Serv. Corp.*, 2007 U.S. Dist. LEXIS 213, at *5 (D.N.J. 2007) (Pisano, J.).  Such a scenario is predicated on the movant having filed a Rule 56.1 statement.

Here, neither defendants nor plaintiff submitted Rule 56.1 statements with their motion

papers.[2]   The only accompanying document to defendants' moving brief was plaintiff's

deposition.  The same deposition was submitted with plaintiff's opposition brief.  The Court is

mindful of the fact that plaintiff is a pro se litigant, and district court judges often relax

procedural rules, including L.Civ.R. 56.1(a), for an unrepresented litigant.  *See e.g., Jordan v.*

*Allgroup Wheaton*, 218 F. Supp. 2d 643, 646 (D.N.J. 2002) (Irenas, J.), aff'd 95 Fed. Appx. 462

(3d Cir. 2004) (pro se plaintiff's failure to submit a Rule 56.1 statement leads court instead to

draw relevant facts "primarily from Plaintiff's complaint, and the transcript of Plaintiff's

deposition testimony, Defendant's Statement of Undisputed Material Facts and supporting

exhibits").

---

[2] Pursuant to Magistrate Judge Shwartz's January 21, 2009 amended scheduling order [D.E. 31], defendants filed a narrative statement of facts on April 14, 2009 [D.E. 39].  The statement may not be conflated with the requirements of a Rule 56.1 statement to be filed along with a motion. Judge Shwartz's distinguished these requirements:

> 3.c.  If leave is granted to file a summary judgment motion, the following protocol shall apply:
>> i. Each motion for summary judgment shall be supported by a separate, short, and concise statement of material facts, set forth in numbered paragraphs, as to which the motion party contends there is no genuine issue of material fact to be tried. Each fact asserted in the statement shall be supported by a record citation . . .
>> ii. Each response in opposition shall be accompanied by a separate, short, and concise statement of material facts.  The opposing statement shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts . . .
> 5. On or before **April 8, 2009**, the plaintiff shall submit a narrative written statement of facts that will be offered by oral or documentary evidence at trial, a list of all exhibits to be offered into evidence at trial, and a list of the names and addresses of all witnesses plaintiff intends to call at trial, together with a summary of anticipated testimony.
> 6.  On or before **April 15, 2009**, each other party shall submit to the undersigned an original and one copy of a narrative written statement of the facts that will be offered by oral or documentary evidence at trial, a list of all exhibits to be offered into evidence at trial, and a list of the names and addresses of all witnesses plaintiff intends to call at trial, together with a summary of expected testimony.

Defendants' brief begins with what is mislabeled as a "Statement of Material Uncontested Facts," when it is really a "Statement of Facts."  The Statement does not conform to the requirements of L.Civ.R. 56.1(a), as discussed in Judge Shwartz's order.

A court may excuse the failure to submit a Rule 56.1 statement where there is no evidence of bad faith. *See e.g., Rumbas v. Borough of Lawnside*, 2008 U.S. Dist. LEXIS 60712 (D.N.J. 2008) (Simandle, J.); *Shirden v. Cordero*, 509 F. Supp. 2d 461, 463-64 n.1 (D.N.J. 2007) (Martini, J.) (stating "lack of compliance with the Local Civil Rules has made it difficult and time-consuming for the Court to determine whether a genuine issue of material fact exists. Nonetheless, the Court, having found no evidence of bad faith, will decide Defendants' motion on its merits"). A judge may relax the Rule as well where the interests of justice so require, which most commonly arises when both parties fail to comply. For example, in *Kee v. Camden County*, 2007 U.S. Dist. LEXIS 23637, at *16 (D.N.J. 2007), Judge Simandale decided to adjudicate a summary judgment motion where "both parties were equally lax in their compliance[,]" and where doing so was "in the best interest of the parties and justice." Nonetheless, before reaching this conclusion, he admonished defendants for providing "little in the way of support for their motion of summary judgment" and relying on documentary evidence and plaintiff's deposition, as well as plaintiff for submitting disorganized exhibits. *Id.* at *15. Judges throughout this District since have agreed with Judge Simandle's position, even after the 2008 amendments became effective. *E.g.*, *Langan Eng'g & Envtl. Servs. v. Greenwich Ins. Co.*, 2008 U.S. Dist. LEXIS 99341 (D.N.J. 2008) (Greenaway, J.); *Apata v. Howard*, 2008 U.S. Dist. LEXI 72321 (D.N.J. 2008) (Irenas, J.).

This Court chooses to move ahead with adjudicating the motion, notwithstanding defendants' failure to provide the required submission. Plaintiff's first amended complaint makes two main allegations—first that he was assaulted by PCJ officers, and second that he was denied proper medical treatment after the alleged assault. The Court will examine each allegation in turn, mindful of its obligation to view the facts "in the light most favorable to the

nonmoving party" and to draw "all inferences in that party's favor."  *Gray v. York Newspapers*,

957 F.2d 1070, 1078 (3d Cir. 1992).

## II.  RAMZIDDIN'S DEPOSITION TESTIMONY

### A.  *The Alleged Assault & Subsequent Grievances*

During his deposition, plaintiff recounted the events surrounding the day of the alleged

assault:

> Q.  Can you give me a little bit of background on that incident?
> A.  There's not much information I can give.  There was a roll call, I was standing on line in compliance with the orders, and a female member of the officer [sic] – Sheriff's officer [sic] of the S.O.R.T. Team/M Department –
> Q.  Excuse me?
> A. S.O.R.T. Team.  She wears a uniform that says S.O.R.T. Team.  She's [a] Sheriff's Officer.  I'm not exactly sure how their system works that well.
>      And then I was on the floor.
> Q.  Do you recall the date of this incident?
> A. This was on or about November 25, 2006, in the location of the basement housing area in Passaic County Jail.
> Q.  Is that where you were originally housed when you were brought to the Passaic County Jail?
> A.  Yes, ma'am.
>      It's [where] everyone was housed at that time.  It's for intake purposes, et cetera.
> Q.  To backtrack, you say there was a female officer that had a uniform that said S.O.R.T. Team?
> A.  Yes, the gray and black letters on it, Passaic County Sheriff's S.O.R.T. Team.
> Q.  And the next thing you know, you were down?
> A.  I was down under barrage of kicks and punches and dog barking, and I just don't understand what that was about.
> Q.  Do you know who brought you down, using your language?
> A.  I don't know her name.  I can identify her through a photo array of mug shots.
>      They don't wear their names on their uniforms.

(Ramziddin Dep. 11:12-13:3.)

Plaintiff's sworn narrative continued as he explained that prior to the alleged attack he

was at roll call, lining up alongside the other inmates.  (*Id.* at 13:11-15:19.)  He testified there

were about 100 inmates in the line-up, 15 to 20 inmates in his line, more than 15 PCJ officers, and a "very loud dog." (*Id.* at 13:14-18, 15:2-4.)

According to plaintiff's sworn testimony, he walked to his assigned place in the line, and then stood there for about a minute before he was suddenly attacked. (*Id.* at 14:7-12, 15:17-16:3.)

> Q. And you indicate that you were taken to the ground. Explain to me how you were on the ground.
>    Were you on your back? Were you on the front of your body?
> A. I was doing what I could to block the punches, to ball up.
> Q. So, you're laying on the ground on your back?
> A. I'm on my side, my back, my knees. Anything I could do to keep the kicks and punches from hurting me.
> Q. And you can't tell me who was delivering these kicks or these punches?
> A. That would be impossible, but I'm sure that it was more than one person and she wasn't alone.
> Q. Was anything being said while you were being struck?
> A. Just a bunch of obscenities, hollering curse words, and: Get the fuck up. Shut up. Stop resisting.
>    I don't know what that was all about.
> Q. Do you know who said stop resisting?
> A. No.
> Q. How about the dog, where was the dog during this time?
> A. I don't know how far he was from me, but he was very close.
> . . .
> Q. Were you ever bitten by the dog?
> A. I don't want to say he bit me, but he was taking some shots at my sneaker. I don't know whether he got the sneaker off the floor, I don't know how he got the sneaker, but he wound up with the sneaker.
> Q. What's going on with the other inmates while this is happening to you?
> A. Absolutely nothing.
>    You think they're going to move to get what I'm getting?
> Q. What areas of your body were struck?
> A. My lower left kidney, my chest, my back, my neck, my knee, my right knee, my right lower fibula, tilbia, face, chest. I was raked, scratched up, swollen everywhere.

(*Id.* at 21:16-22:21, 23:7-25.)

Plaintiff testified that he filed charges after the incident:

> Q. Did you file any charges –
> A. I tried.
> Q. Tell me about it.
> A. Nobody wanted to talk.  I wrote internal affairs, I wrote Warden Myers, I tried to talk to Lieutenant Tolerico, who is the liaison between the federal inmates and Passaic County Jail.
> Q. Let me stop you there.
>     When did you write to Internal Affairs?
> A. Immediately.  I wrote them as soon as this assault happened. . . .
> Q. Did [the officer] give you a grievance form?
> A. He said: Yea, this is usually what gets guys in trouble, this paperwork here.
>     I filled it out.  I said:  Where's the mailbox?
>     He said:  We don't have a mailbox.  Give it to me, I'll put it in.
>     I put it in the slot.  I never seen it again.

(*Id.* at 39:2-14, 39:20-40:4.)   Plaintiff stated that he also wrote a letter to the PCJ Warden, defendant Charles Myers, a week or two after the alleged assault, and filled out a separate grievance form and mailed it to him.  (*Id.* at 40:14-21.)  According to his testimony, he also spoke to Lieutenant Tolerico, who told plaintiff he did not believe his allegations.  (*Id.* at 40:22-41:21.)  Finally, plaintiff testified that he made several requests to identify the officers involved in the alleged assault so that he could file charges against them,[3] and that he sent letters to "County Counsel," "Passaic County Counsel," and the "freeholders" asking for help.  (*Id.* at 41:22-25, 46:10-47:1.)

### B.  Denial of Proper Medical Care

Plaintiff also contends that he was denied proper medical care for the injuries he sustained from the assault.  He testified that after the alleged assault, he was transferred to

---

[3]  Plaintiff testified that he asked the following individuals about the officers' identities: Lieutenant Tolerico, Warden Myers, and defense counsel, Carmen Cortes-Sykes. (Pl. Dep. 41:13-42:15.)

Barnert Hospital (date of transfer unknown) to be treated for a knee injury related to the alleged

assault. (*Id.* at 43:2-44:8.)

He alleges that he was denied proper medical care because the medical personnel were

unduly influenced by PCJ officers:

> Q.  Did you ever tell any hospital personnel that you were assaulted by an officer?
> A.  I tried.
> Q.  You tried, but is the answer yes or no?
> A.  Well, yeah, I tried, but you can't hold a conversation.  The officer is not going to allow it. Every time a medical personnel walks in, you get two or three officers that walk in.

(*Id.* 45:4-14.)

> Q. And I seen Dr. Wahba as my initial for intake.  That was my first time to see him, I believe.  So as he's seeing me, he's looking at my face:  What's happening with you?
>     I said:  I was beat up.
>     The officer's outside the door, Medical Unit Officer Mickens.  He's looking not saying anything.  Mickens, he's not a bad guy, but you know…
>     You're talking with Dr. Wahba, he's scared; other officers are in and out all the time, standing at the door listening.

(*Id.* at 34:14-35:4.)


### III. DISCUSSION

#### A.  Applicable Legal Standard

A district court should grant summary judgment "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c).  No genuinely triable issue of fact exists when the moving

party demonstrates—based on the submitted evidence, and viewing the facts in the light most

favorable to the non-moving party—that no rational jury could find in the non-movant's favor.

*Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994).

The moving party bears the burden of showing a genuine issue of material fact, and the non-movant opposes the motion by presenting affirmative evidence to the contrary. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986). A movant need not affirmatively disprove the case; he may move on the ground that the non-movant lacks evidence "sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Justice White's concurring opinion in *Celotex* warned that "[i]t is the defendant's task to negate, if he can, the claimed basis for the suit." *Celotex*, 477 U.S. at 328. *Celotex*'s progeny reflects those sentiments—the movant bears the burden of *demonstrating* the lack of evidence in the record to support plaintiff's claims. *E.g.*, *Haywood v. Nye*, 999 F. Supp. 1451, 1463 (D. Utah 1998); *Andrews v. Crump*, 984 F. Supp. 393, 402-03 (W.D.N.C. 1996). It is not enough to support a motion with only conclusory assertions that the plaintiff has no evidence to prove his case.

### B.  Application

The record on which defendants base their argument consists of plaintiff's deposition, and that alone. They argue that based on his deposition testimony, plaintiff has failed to substantiate his claims that PCJ officers assaulted him and failed to give him proper medical care for the injuries he sustained. In their brief, defendants point to the lack of "independent evidence" in the record:

> Other than his allegations there is no independent evidence from which a reasonable trier of fact can determine that a constitutional violation occurred. There are no reports to attest to Plaintiff's claim that an incident took place. There are no complaints filed by the Plaintiff within the Jail or complaints made to any medical provider in the Jail or in the hospital. In fact, the documentation provided to date indicates that there is never any mention whatsoever of any assault. The Plaintiff's self serving statements in the complaint are all that exist

> to demonstrate that an incident took place.  Clearly, the Court must look to all of
> the proofs offered and can only come to the conclusion that Plaintiff has not
> demonstrate [sic] a genuine issue of material fact[.]

(Def. Br. 7.)  The source of these claims is unidentified, because defendants have not supplied

any testimonial or documentary evidence as support for the assertions in their brief.

Defendants first refute plaintiff's claim of assault, arguing that it never occurred.  In their

brief, they state:  "There are no entries in any of the records of the Passaic County Jail indicating

that there was any incident involving Plaintiff or a complaint by him of an assault."  (*Id.* at 1.)

They do not identify the source of this information nor provide the Court with PCJ's records as

support.  They go no further in arguing their point:

> We cannot get to the analysis stated above as there are no facts or evidence to
> suggest that there was any type of involvement between officers and the Plaintiff.
> . . . Also, Plaintiff cannot identify who he alleges caused the injury nor can he
> provide any other information to substantiate his claim.

(*Id.* at 12.)

Defendants argue along the same lines regarding plaintiff's allegations of improper

medical care—there is no evidence.  "Plaintiff has not supplied any medical expert regarding his

injuries."  (*Id.* at 1.)  They elaborate later in the brief, stating that "the medical records available

which consist of both the Passaic County Jail records and the Barnert Hospital records only

reveal extensive treatment for hypertension and complaints of knee pain."  (*Id.* at 13.)  Again,

defendants merely state in their brief what the "medical records available" in the jail or the

hospital will establish as opposed to supplying the documents, leaving the Court to accept this

assertion on faith.

Defendants have attempted to satisfy their burden of production by flat denials and

unsworn, unsupported statements in their brief that there is an absence of independent evidence

to support plaintiff's claims.  Making matters worse, defendants also argue that they are entitled

to qualified immunity, thereby telling the Court that, albeit with justification, they in fact <u>did</u> do something.

Additionally, defendants have failed to comply with the amended scheduling order entered by Magistrate Judge Shwartz on January 21, 2009, *see supra* n.2.  In it, Judge Shwartz directed both parties to submit a narrative written statement of facts that will be offered at trial, a list of all exhibits to be offered into evidence at trial, and the names and addresses of all witnesses to be called, together with a summary of their expected testimony.  On April 14, 2009, *see supra* n.2, defendants filed a submission that did not comply with Judge Shwartz's direction, in that they failed completely to provide the names and addresses of their witnesses or indicate the substance of the anticipated testimony in a meaningful way.  Instead, defendants submitted the following information:

> C.  **Witnesses:**
>
> Nursing staff/medical staff at the Passaic County Jail
> (The medical staff is expected to testify regarding the medical treatment and examination of the Plaintiff.)
>
> Medical/Nursing staff of Barnert Hospital
> (The staff is expected to testify regarding the examination and treatment while at the hospital.  Also as to the findings of MRI)
>
> All named Defendants are expected to testify as to their official duties and lack of communication with the Plaintiff.
>
> Defendants also intend to call all officers identified as being present in the location where Plaintiff was housed.

From the foregoing, it appears that defendants have proposed witnesses with a story to tell, including the officers who were on the scene during the alleged assault.  Additionally, in their submission on Judge Shwartz's order defendants indicated that they intend to offer the following documentary evidence at trial:   PCJ medical records, plaintiff's answers to

11

interrogatories, a transcript of plaintiff's deposition, medical records from Barnert Hospital, and the PCJ roster.  None of this evidence was provided with their motion papers.

## IV. CONCLUSION

Defendants have chosen to make a dispositive motion seeking dismissal on the merits. They rely solely on flat denials in their brief about the specific facts and details of incidents that plaintiff testified about in his deposition, and in doing so, flout the Local Rules governing motion practice.   Further, this Court's review of the docket has revealed that defendants filed submissions on Magistrate Judge Shwartz's scheduling order that disregard her specific directions.   The Court denies defendants' motion in full and will require compliance with defendants' pretrial obligations.   An appropriate order will be entered.

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.